**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 4, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

JESSIE D. DUFFIELD,

      Plaintiff-Appellant,

v.

MICHAEL JACKSON, M.D., Medical
Director; JEFF TROUTT, D.O., Chief
Medical Officer; KATRYNA FRECH,
R.N., Correctional Health Services
Administrator; ROY ARIAN, P.A.C.,
Physician's Assistant and JOHN DOE,
Physicians and Staff, OU Medical
Center,

      Defendants-Appellees.

No. 08-6002

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. 5:07-CV-00090-R)**

---

Submitted on the briefs:[*]

Jessie D. Duffield, Pro Se, Plaintiff-Appellant.

Jill Tsiakilos, Assistant Attorney General, Oklahoma City, OK for Defendants-
Appellees.

---

   [*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination
of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument.

Before **TACHA**, **KELLY** and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

Plaintiff Jessie D. Duffield, proceeding pro se, brought a 42 U.S.C. § 1983 suit against several members of the medical staff at the James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma, claiming that they violated his Eighth Amendment right to be free from cruel and unusual punishment by showing deliberate indifference to his medical condition. After referring the case to a magistrate judge who issued a report and recommendation, the district court dismissed Mr. Duffield's claim against some defendants and granted summary judgment in favor of others. Mr. Duffield appeals these dismissals and grants of summary judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Mr. Duffield, who has been an inmate in the custody of the Oklahoma Department of Corrections since February 26, 1999, was transferred to the JCCC on November 17, 2005. Soon after his transfer he began complaining of hip and lower back pain, and later he also complained of an ear infection. He sought medical attention for both ailments, and a series of examinations and treatments by JCCC physicians followed for the next year. Though he received treatment, Mr. Duffield alleges that he has not been treated in a "humane manner,"

Complaint at 2, because the medical staff has failed to provide him the treatment and medication necessary to relieve the pain from his hip and lower back, has not sent him to an outside specialist who might prescribe a more effective course of treatment, and has provided such cursory treatment of his ear as to amount to "deliberate indifference." *Id.* Mr. Duffield sued Dr. Michael Jackson, the medical director of the JCCC; Dr. Jeff Troutt, a JCCC doctor who attended to Mr. Duffield; Nurse Katryna Frech, an administrator who facilitated Mr. Duffield's medical requests; Roy Arian, a Physician's Assistant who attended to Mr. Duffield; and John Doe, the physicians and staff at the Oklahoma University Medical Center, where Mr. Duffield had a consultation with an ear specialist.

The district court referred Mr. Duffield's claim to a magistrate judge for preliminary review pursuant to 28 U.S.C. § 636(b)(1)(B). On October 30, 2007, the magistrate judge issued a Report and Recommendation in which he recommended that the defendants' motions for dismissal and motions for summary judgment be granted. Specifically, he recommended that the claims against Dr. Jackson, Nurse Frech, and John Doe be dismissed because Mr. Duffield had failed to allege that any of them was personally involved in the alleged deliberate indifference, and he recommended summary judgment for Mr. Arian and Dr. Troutt because Mr. Duffield had failed to produce evidence showing a genuine issue of material fact that either men had exhibited deliberate

indifference. He also denied without prejudice Mr. Duffield's request for limited

discovery for service and for appointment of counsel.

The magistrate judge's Report and Recommendation ended with an explicit

message to Mr. Duffield that advised him of his right to object to the report and

the consequences of failing to do so:

> The Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by November 19, 2007, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991).

Report and Recommendation at 35. The November 19, 2007 deadline came and

went without any objection from Mr. Duffield. On November 27, 2007, the

district court entered an order that adopted the magistrate judge's report and

recommendation in its entirety. Three days later, on November 30, the court

received an undated letter from Mr. Duffield in which he disputed some of the

report's factual findings and claimed that the Department of Corrections no longer

had legal aides who could assist him. R. at 24. On December 11, Mr. Duffield

filed a motion for a thirty-day extension in which to object to the Report and

Recommendation. The district court denied his request, citing the fact that "the

deadline for objection passed without a request for extension and . . . Plaintiff

was not diligent in seeking an extension." Order of December 12, 2007. Mr.

Duffield filed an objection to the denial of an extension on December 19, 2007,

which the district court struck as repetitive on December 21.  Mr. Duffield now appeals the final order, the order denying his extension of time, and the order striking his objection to the order denying an extension of time.

## II.  Analysis

### A.  Waiver of Appellate Review

Mr. Duffield disputes the factual findings recommended by the magistrate judge and adopted by the district court, arguing that there is a genuine issue of material fact as to whether the behavior of each defendant rose to the level of deliberate indifference to his medical conditions.  The record unequivocally shows, however, that Mr. Duffield failed to timely object to the magistrate's report.  "[W]e have adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).  The failure to timely object to a magistrate's recommendations "waives appellate review of both factual and legal questions." *Id.*  There are two exceptions when the firm waiver rule does not apply: "when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the 'interests of justice' require review." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005); *Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996).  Neither exception applies to Mr. Duffield's case.

Though Mr. Duffield is a pro se litigant, the magistrate judge was careful to inform him of both the time period for objecting and the consequences of failing to object, which we have held is sufficient. *See, e.g. Wardell v. Maggard*, 470 F.3d 954, 958 (10th Cir. 2006); *Morales-Fernandez*, 418 F.3d at 1119. The report "stated in clear English," *id.* at 1119, that Mr. Duffield had until November 19 to object and that failure to do so would waive his right to appellate review of all factual and legal questions. Report and Recommendation at 35. Thus, he cannot avail himself of the first exception to the waiver rule.

We are also unpersuaded that the "interests of justice" exception demands that we overlook the waiver rule in Mr. Duffield's case. Although "interests of justice" is "a rather elusive concept," *Morales-Fernandez*, 418 F.3d at 1120, we have considered factors such as "a *pro se* litigant's effort to comply, the force and plausibility of the explanation for his failure to comply, and the importance of the issues raised." *Id.* Mr. Duffield does not claim to have been unaware of the filing deadline, nor does he claim to have attempted to comply with it. The fault rests with him alone. The only explanation he offers is that the law clerks who had been assisting the inmates at his facility were transferred to another facility. While we appreciate the difficulties of proceeding pro se, Mr. Duffield could have at the least made the factual challenges that he eventually made a week after the deadline had expired, especially as he presumably made the objections at that

time without assistance from legal professionals. He also could have requested an extension. He did neither of these things.

When we consider whether the importance of the issues raised might trigger the "interests of justice" exception, we have said that, "[i]n many respects, the interests of justice analysis we have developed, which expressly includes review of a litigant's unobjected-to substantive claims on the merits, is similar to reviewing for plain error." *Id.* To show plain error, Mr. Duffield would have to show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005).

We cannot say that the decision in this case to grant the defendants' motions to dismiss and motions for summary judgment were plain error. For a prisoner to show that his lack of medical attention violated his Eight Amendment right to be free from cruel and unusual punishment, he must show "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). A prison doctor's "negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment," *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), as "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Furthermore, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). This means that Mr. Duffield must show not only that his medical care rose to the level of "unnecessary and wanton," *Estelle*, 429 U.S. at 104, but also that there is an "affirmative link" between each defendant and the constitutional deprivation. *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)).

The magistrate identified ample undisputed evidence of medical attention that the JCCC staff gave to Mr. Duffield. He received repeated examinations from Dr. Troutt and Mr. Arian, underwent lab-work and x-rays, was prescribed several different medicines, and saw an outside specialist for his ear infection. Mr. Duffield disagrees with some of the diagnoses and treatments and argues that they did not relieve the pain. Whether the JCCC staff was medically negligent is not the question, though; Mr. Duffield did not file a medical malpractice claim, he filed a § 1983 claim alleging cruel and unusual punishment.

Mr. Duffield also points to specific errors in the magistrate judge's findings. He argues that the delay in sending him to the ear specialist, the failure to send him for a repeat examination by that specialist, and the failure to ever send him to an orthopedic specialist all show deliberate indifference. However, the "contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation." *Ledoux v. Davies*, 961 F.2d 1536, 1537

-8-

(10th Cir. 1992). The decision that a patient's condition requires a specialist is a decision about the patient's course of treatment, and "negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment." *Ramos*, 639 F.2d at 575. We cannot say that the magistrate judge committed plain error in finding that the JCCC's failure to consult more with outside specialists did not amount to deliberate indifference.

Mr. Duffield also contests the factual findings by arguing that the defendants lied about providing him certain treatments—specifically, Rocephin injections for his ear. The magistrate judge considered Mr. Duffield's allegation of lying, however, and determined that the records of these injections in the medical charts overwhelmed Mr. Duffield's claim that he could not remember receiving the injections. Report at 32. He also found that even if Mr. Duffield had never received the injections, it would be immaterial to showing deliberate indifference, as he produced no evidence that the doctors *knew* he was not receiving the prescribed treatment. *Id.* Again, we cannot say that this finding was plain error.

Finally, we cannot say that it was plain error to dismiss the claims against Dr. Jackson, Nurse Frech, and John Doe because Mr. Duffield had failed to allege personal participation in the deprivation of medical care. A § 1983 claim requires an "affirmative link," *Green*, 108 F.3d at 1302, between the defendant and the constitutional violation, and it was not plain error to find that Mr. Duffield failed

to allege affirmative links for these three defendants. Dr. Jackson supervised the JCCC medical operation, but supervisor status is not sufficient to create § 1983 liability. *Id.* Nor can we say that the magistrate plainly erred when he found that Mr. Duffield's suspicions that Dr. Jackson promulgated an unwritten policy against referring inmates to specialists and following specialists' advice were anything more than speculative, especially since Mr. Duffield did receive a specialist consult. *See* Report at 7–9. Nurse Frech facilitated Mr. Duffield's various requests for medical services, and the finding that she lacked an affirmative link with his diagnosis and treatment because she simply directed Mr. Duffield to the proper procedures for filing his requests was also not plain error. *Id.* at 9–11. John Doe, the staff and physicians at the Oklahoma University Medical Center, treated Mr. Duffield when he came for a specialist consult, but his allegation that their examination was cursory does not sufficiently allege deliberate indifference rather than mere medical malpractice. *Id.* at 11–12. Therefore, we cannot say that it was plain error to dismiss Mr. Duffield's claims against these three defendants.

## B. Denial of Motion for Extension

Mr. Duffield's argument that the district court erred by denying his motion for a thirty-day extension in which to object to the magistrate judge's Report and Recommendation, which would thereby enable him to preserve appellate review of the issues, also fails. Mr. Duffield did not file his motion until December 7,

2007, several weeks after the November 19 deadline to object had elapsed. Had he filed a more timely notice for extension, he perhaps would have received it, but we find no abuse of discretion by the district court in denying his untimely motion for an extension.

### III. Conclusion

Accordingly, we **AFFIRM** the district court's final order, order denying an extension of time, and order striking the objection to the order denying an extension of time. We **DENY** his motion to supplement the record on appeal. Mr. Duffield's motion to proceed *in forma pauperis* is **GRANTED**, and we remind Mr. Duffield that he is obligated to continue making partial payments until the entire fee has been paid.

Entered for the Court,

Michael W. McConnell
Circuit Judge